JULIAN HAMMOND (SBN 268489)
jhammond@hammondlawpc.com
POLINA PECHERSKAYA (SBN 269086)
ppecherskaya@hammondlawpc.com
ARI CHERNIAK (SBN 290071)
acherniak@hammondlaw.com
HAMMONDLAW, P.C.
1829 Reisterstown Rd. Suite 410
Baltimore, MD 21208
(310) 601-6766
(310) 295-2385 (Fax)

Attorneys for Plaintiffs and Putative Class

# UNITED STATES DISTRICT COURT
## NORTHER DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| DAVID STOCK, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF: |
| vs. | 1. **RESCISSION UNDER CIVIL CODE § 1689(D)(2)** |
| INTUIT, INC., a Delaware Corporation, | 2. **RECISSSION UNDER CIVIL CODE § 1689(D)(4)** |
| Defendant. | 3. **BREACH OF CONTRACT** |
| | 4. **UNJUST ENRICHMENT/RESTITUTION** |
| | 5. **NEGLIGENCE** |
| | 6. **NEGLIGENT PERFORMANCE OF UNDERTAKING** |
| | 7. **MONEY HAD AND RECEIVED** |
| | 8. **AIDING AND ABETTING FRAUD** |
| | 9. **AIDING AND ABETTING CONVERSION** |
| | 10. **CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE § 17200 ET SEQ. ("UCL")** |
| | **DEMAND FOR JURY TRIAL** |

This is a class action brought by Plaintiff David Stock on behalf of himself and all individuals and businesses in the United States whose personal information was used to file fraudulent tax returns through TurboTax.

## INTRODUCTION

1. TurboTax is a tax preparation software developed by Intuit, Inc., a leading developer of tax preparing software. It is estimated that about 3,000,000 individuals use TurboTax tax preparation products each year, with TurboTax competitors, such as H&R Block and TaxAct lagging significantly behind, assisting with completion of only about 7,000,000 self-prepared returns.

2. TurboTax allows individuals to complete their own income tax returns by providing a step-by-step guide. Individuals have the option of using the free version or purchasing the Deluxe or Premier version of the TurboTax software for completing their federal tax returns, TurboTax also provides TurboTax State, for an additional fee, for preparation of state tax returns. Aside from not having to employ costly professional services, a significant benefit of using TurboTax is that it allows individuals to file their taxes electronically, which is a more convenient way of filing taxes and results in faster processing of tax refunds. Additionally, TurboTax offers its customers the ability to receive their refunds via direct deposit or a prepaid debit card.

3. At the beginning of the 2015 tax-filing season, about 19 states announced that they noticed a spike in fraudulent tax returns, all with a common link – they were all filed through Intuit's TurboTax system. Intuit announced that it was working with a number of state agencies to address the spike in fraudulent tax returns filed through its TurboTax software and was forced to temporarily halt electronic filing of state tax returns. It is believed that some of fraudulent tax filings were done using existing legitimate customer accounts with TurboTax, which were hacked, while others were done by fraudsters using personal information, such as social security numbers or log in information, to create new fake TurboTax accounts and then proceed to filing fraudulent tax returns. The fraudsters then diverted the refunds to their own bank accounts or prepaid debit cards. Although TurboTax denies that fraudsters breached its system in instances where fraudsters obtained personal information and then created fake accounts, the Federal Bureau of Investigation is said to have opened an investigation to

1

determine whether the personal information used to file fraudulent tax returns through TurboTax was obtained from TurboTax or a different source.  What is clear, however, is that the legitimate accounts that were accessed by fraudsters were accessed as a result of fraudsters' breaching the TurboTax system.

4.     Once a fraudulent tax return was filed using customer's information, that customer was not able to use TurboTax software to file his or her taxes electronically.  Defrauded customers were instead told by Intuit to follow a series of steps to alert the I.R.S. and/or state tax authorities of the fraudulent tax returns and had to file hard copies of their tax returns.  Many are still awaiting resolution, including their tax refunds, or whether they will get their tax refunds at all.  Intuit for its part, refused to issue refunds for the purchase price of TurboTax software to affected customers.

5.     Although tax-related identity theft was the most common form of identity theft reported to the Federal Trade Commission ("FTC") in the year 2014, and for the last five years, with FTC reporting that it received 332,646 identity theft complaints in 2014 alone, with nearly a third of these complaints being tax-related identity theft complains, Intuit failed to implement reasonable and adequate security measures.  Two of Intuit's former security employees, Robert Lee, who left Intuit in or about July 2014, and Shane MacDougall, who resigned in or about February 2015, and who filed a whistleblower complaint with the Securities and Exchange Commission, allege that Intuit repeatedly refused to adopt basic security measures.  In fact, according to Mr. Lee, Intuit scaled down its efforts of trying to stop fraudulent activity and prevented its security staff from implementing security measures that would make it more costly and difficult for fraudsters to file tax returns through TurboTax in order to protect Intuit's market share, which would slide if fraudsters found it difficult to file fraudulent returns through TurboTax and moved their activity to Intuit's competitors. That is, because, upon information and belief, Intuit receives a fee for every tax return that is "successfully" filed, and many fraudulent returns are successfully filed.  Intuit's chief tax officer David Williams said "[i]f any one company, ours or any other company, decided to take a while bunch of actions that would 100 percent determine that

every single one of their customers was exactly who they said they were, that would not stop fraud in the industry," . . ."[i]t would only push the fraud around.  It would squeeze the balloon."[1]

6.     Plaintiff brings this action on behalf of himself and all others similarly situated individuals and alleged as follows:

## FACTS

### A. Defendant and its Business

7.     Intuit is an American software company that develops financial and tax preparation software and related services for small businesses, accountants and individuals.  Intuit makes the personal finance programs Quicken and TurboTax, as well as the small business accounting program QuickBooks.  The Company also produced professional tax solutions ProSeries and Lacerte, among other things.

8.     Intuit has more than $4 billion in annual revenue and a market capitalization of more than $10 billion.

9.     Intuit maintains offices abroad and in the United States, but sells most of its products within the United States.  It currently employs approximately 8,000 individuals in their national and international offices combined.

### B. Spike in Fraudulent Tax Filings In the Recent Years

10.     According to the FTC, tax-related identity theft was the most common form of identity theft reported to the FTC in 2014. The FTC received 332,646 identity theft complaints, nearly a third of which were tax-related identity theft complains. According to the FTC, tax identity theft has been the largest ID theft category within the last five years.

11.     Fraudulent tax filings have been on the rise since 2010, according to data from the FTC, which is attributed to the rise in the use of electronic tax filings. According to the United States Government Accountability Office, fraudulent tax filings occur when fraudsters use stolen information of individuals to file income tax returns and divert tax refunds.

---

[1] http://www.washingtonpost.com/news/get-there/wp/2015/03/04/unprecedented-surge-in-online-tax-scams-raises-questions-about-turbotax/ (last accessed May 18, 2015).

CLASS ACTION COMPLAINT

**C**. **Fraudulent 2014 Tax Filings Through TurboTax**

12.     TurboTax is a tax preparation software package, originally developed by Michael A. Chipman of Chipsoft and acquired by Intuit in 1993.  TurboTax is one of the most popular tax preparation software packages in the United States.  It is available for both state and federal tax filings and is designed to guide users through their tax returns step-by-step.

13.     It is estimated that TurboTax is used to file 30,000,000 state tax returns annually.

14.     In or about February 2015, approximately 19 states and Intuit itself discovered a spike in fraudulent tax filings.

15.     After several state revenue departments complained to their state attorney general's of the increase in bogus state refund requests, TurboTax temporarily stopped all state filings to allow investigation into possible breach of security.

16.     Although Intuit reported that breach of personal information occurred outside the TurboTax system, the F.B.I. is currently investigating the matter.  Either way, fraudsters accessed existing customer accounts or created new accounts on TurboTax, completed and filed fraudulent income tax returns using the software and then diverted the tax refunds to either their own bank accounts or had them transferred onto prepaid debit cards.

17.     Either way, Intuit failed to implement reasonable and adequate security measures, such as a basic two-factor authentication process, implemented by numerous websites years prior, even though it was well aware of the fact that tax ID theft category has been the largest fraud category for the last five years, and many fraudulent tax returns had been filed through its TurboTax system in the past.

18.     A two-factor authentication process is a basic security precaution which involves the service sending its customer a unique code for one time use, via text message or specialized mobile app, that must be entered along with the customer's log in information when he or she signs up for the service and anytime after that when the service detects that the customer's credentials are being used from an IP address or computer that the service does not recognize.

19.     Intuit finally began implementing a two-factor authentication process on or about February 13, 2015, following the surge in fraudulent tax filings and after it was forced to temporarily stop processing state tax filings.

20.     What's worse, however, is that Intuit's former employees claim that TurboTax knowingly and intentionally allowed fraudulent tax returns to be filed with tax authorities.  According to Intuit's former security business partner at its consumer tax group Mr. Lee, his team developed sophisticated fraud models to quickly identify accounts that had been opened by fraudsters, but, to his dismay, Intuit repeatedly refused to adopt these models.[2]  According to Mr. Lee, his team found "literally millions of accounts that were 100 percent used only for fraud. But management explicitly forbade us from either flagging the accounts as fraudulent, or turning off those accounts."[3]

21.     In fact, according to Mr. Lee, Intuit scaled down its efforts of trying to stop fraudulent activity to protect Intuit's market share, which would slide if fraudsters found it difficult to file fraudulent returns through TurboTax and moved their activity to Intuit's competitors.  In other words, Intuit's chief tax officer David Williams explained that adopting stricter security measures would not actually prevent fraud, but only send the fraud to its competitors.[4]

### D. Plaintiff's Discovery of Fraudulent Tax Filing Using His Information

22.     Plaintiff has been using TurboTax software to prepare his state and federal taxes for approximately the last seven or eight years.

23.     To complete and file his 2014 taxes, Plaintiff decided to use TurboTax Online software.

24.     Plaintiff purchased TurboTax Online software "State MD TY2014 PREP" and "DELUXE TY2014 PREP" for completing his state and federal tax returns for $94.98.

25.     On or about April 13, 2015, Plaintiff logged into his account with TurboTax and proceeded to complete his income tax return forms.  Upon completing the forms, Plaintiff clicked to submit his tax

---

[2] http://krebsonsecurity.com/tag/turbotax/ (last accessed on May 21, 2015).

[3] *Id.*

[4] http://www.washingtonpost.com/news/get-there/wp/2015/03/04/unprecedented-surge-in-online-tax-scams-raises-questions-about-turbotax/ (last accessed May 18, 2015).

return electronically, but a pop up message appeared on his computer screen stating that an income tax return had already been filed using his social security number and that another tax return using his social security number could not be filed.

26.     Plaintiff then contacted Intuit in order to try and figure out what had happened.  An Intuit representative advised Plaintiff that state and federal tax returns had indeed been filed using his social security number, but a different email address from the one used by Plaintiff to register with TurboTax had been used for the filing.  An Intuit representative advised Plaintiff to contact Maryland's state tax authorities and to file form 14039 with the I.R.S. to alert the I.R.S. about the fraudulent filing.

27.     As a result of this fraud, Plaintiff spent many hours contacting Maryland state tax authorities, filing a police report, contacting the I.R.S., hand delivering his state tax filings to the state Comptroller's Office in Annapolis, Maryland, among other things.  Plaintiff is still awaiting the resolution of this issue, including his tax refund, and has not been contacted by or received any further information from Intuit at this time.

28.     Intuit provided no further support or answers as to why or how Plaintiff's information had been stolen.

29.     On or about April 13, 2015, Plaintiff requested from Intuit a full refund for the purchase price of TurboTax Online tax preparation software, but Intuit refused to issue any refund.

30.     Instead, on or about April 13, 2015, Intuit sent an email to Plaintiff in which it stated "You may be eligible for a $25 cash back offer, go to https://turbotax.intuit.com/25back."  Plaintiff never claimed the offer.

## JURISDICTION and VENUE

31.     This Court has jurisdiction under 28 U.S.C. § 1332(d).  This is class action involving more than one hundred Class members.  Plaintiff is citizen of state different from Defendant, and the amount in controversy, in the aggregate, exceeds the sum of $5 million exclusive of interest and costs.

32.     Venue lies within this District under 28 U.S.C. § 1391(b)-(c) because: (a) Defendant regularly transact business within this District; (b) certain acts giving rise to the claims asserted in this Complaint occurred in this District; (c) the actions of Defendant alleged in this Complaint caused

damages to a substantial number of Class members within this District; and (d) Defendant has its headquarters in this District.

33.   This Court has jurisdiction over Defendant because Defendant is headquartered in Mountain View, California, and is authorized to conduct and does conduct substantial business in California. Defendant has marketed, promoted, distributed and sold TurboTax tax preparation software in California, rendering exercise of jurisdiction by this Court permissible.

PARTIES

34.   Plaintiff David Stock is a resident of Baltimore, Maryland. On or about April 23, 2015, Plaintiff discovered that his information was stolen and a fraudulent 2014 state and federal tax returns using his information had been filed through TurboTax.

35.   Defendant Intuit, Inc. is a publicly traded corporation.  It is incorporated in Delaware and headquartered in Mountain View, California.

CLASS ACTION ALLEGATIONS

36.   Plaintiff brings this action on behalf of himself and all other similarly situated individuals as a class action pursuant to Federal Rules of Civil Procedure Rule 23, and seeks to represent the following Class (collectively, "Class"):

> All persons in the United States who purchased TurboTax Online, TurboTax Mobile, or TurboTax Desktop tax preparation software and whose TurboTax accounts were accessed by fraudsters and used to file fraudulent tax returns through TurboTax.

37.   Excluded from the proposed Class are governmental entities; Defendants, officers, directors, and employees of Defendant; the Judge assigned to this action; and putative Class Counsel.

38.   This action has been brought and may properly be maintained as a class action under Rule 23 because it satisfies the class action prerequisites of numerosity, commonality, typicality, and adequacy:

> a.   Numerosity:  Individual joiner of the Class members would be wholly impracticable.  TurboTax is estimated to be used by 30,000,000 individuals annually to file their taxes. In 2014, the FTC reportedly received approximately 109,000 (1/3 of 332,646) tax ID fraud complaints.

b.      Commonality:  There are questions of law and fact common to the Class that predominate over questions affecting only individual class members.  The principal common issues include, but are not limited to the following:

i.      Whether Intuit failed to take reasonable and adequate security precautions to protect its customers from fraudulent filings;

ii.      Whether TurboTax was systematically used by fraudsters to file fraudulent tax returns;

iii.      Whether TurboTax failed to reasonably prevent fraudulent opening of accounts or fraudulent logging into and use of accounts of its customers;

iv.      Whether Plaintiff and class members lost the value of the benefit they bargain for when they purchased TurboTax tax preparation software;

v.      Whether Intuit was unjustly enriched as a result of its actions or inactions, including its refusal and/or failure to issue refunds of the purchase price to defrauded customers;

vi.      Whether the actions or inactions by Intuit in allowing customer accounts to be hacked were negligent and violated the California's Unfair Competition Law, California Business and Professions ("Bus. & Prof.") Code §§ 17200, *et seq.*;

vii.      Whether as a result of Intuit's actions or inactions Plaintiff and class members were damaged;

viii.      The nature and extent of the actual damages suffered by Plaintiff and members of the Class;

ix.      Whether punitive damages and equitable and declaratory relief are appropriate.

c.      Typicality:  Plaintiff's claims are typical of the claims of the Class. Intuit's failure to implement reasonable and adequate security measures allowed fraudsters to access customer accounts of Plaintiff and class members, to file fraudulent tax returns using Plaintiff and class

members' information, respectively, and to divert Plaintiff's and class members' tax refunds to their own accounts or prepaid debit cards. Intuit refused to issue refunds for the purchase price of TurboTax software paid by Plaintiff and those class members that purchased TurboTax software even though Plaintiff and class members did not receive the full benefit of their bargain with Intuit. Plaintiff and members of the Class thus all suffered similar injuries as a result of Intuit's common course of conduct in violation of law as alleged herein.

d.    Adequacy of Representation:  Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of the Class Members.  Plaintiff's interests do not conflict with those of Class Members. Counsel who represents Plaintiff is competent and experienced in litigating large consumer class actions, and will devote sufficient time and resources to the case and otherwise adequately represent the Class.

e.    Superiority of Class Action:  A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Class Members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Each class member has been damaged or may be damaged in the future by reason of Intuit's negligent practices of failing to implement reasonable and adequate security precautions, and leaving its customers' accounts exposed to fraudsters, and each class Members has been further damaged by Intuit's refusal to issue refunds for the purchase price of TurboTax software.  Certification of this case as a class action will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system and would prevent repetitious litigation. If this action is not certified as a Class Action, it will be impossible as a practical matter for many or most class members to bring individual actions for damages suffered as a result of Intuit's fraudulent conduct, due to the relatively small amounts of such individual recoveries relative to the costs and burdens of litigation.

## FIRST CAUSE OF ACTION
### (VIOLATION OF CAL. CIV. CODE § 1689(b)(2) – Defendant's Fault)

39.    Plaintiff repeats and re-makes every allegation above as it set forth herein in full.

40.     Plaintiff and all similarly situated individuals entered into a contract with TurboTax for the purchase of its tax preparation software based on their reasonable and mistaken belief that they were contracting to purchase software that would allow them to prepare their tax returns and to file them securely and electronically with the I.R.S. and state tax authorities.

41.     As a consequence of the hereinabove-alleged wrongful acts of Defendant, Plaintiff and those similarly situated are entitled to rescind their contract on ground that the consideration to Plaintiff for Defendant's TurboTax tax preparation software has failed, in whole or in part, through the fault of Defendant, in that Defendant's failure to take reasonable and adequate security precautions to protect Plaintiff's TurboTax account from being accessed by fraudsters, has deprived Plaintiff and class members of the full benefit of the bargain of their contract/agreement with Defendant.  Accordingly, Plaintiff contends that the agreement should be rescinded pursuant to California Civil Code § 1689(b)(2) and be adjudged to be of no force or effect.

42.     Plaintiff requests that the Court determine the rights and responsibilities of the parties under the agreement and declare that the agreement is rescinded under California Civil Code § 1689(b)(2) and is of no force or effect, and seeks relief as prayed for below.

## SECOND CAUSE OF ACTION
### (VIOLATION OF CAL. CIV. CODE § 1689(b)(2) – Material Failure of Consideration)

43.     Plaintiff incorporates the allegations in each above numbered paragraph.

44.     As a consequence of the above-alleged wrongful acts of Defendant, Plaintiff and members of the class are entitled to rescind their contract on the ground that the consideration to Plaintiff and class members for Defendant's TurboTax tax preparation software has failed in a material respect, in that Plaintiff's account with Defendant and accounts of all class members with Defendant were accessed by fraudsters and used to file fraudulent state and/or federal tax returns using Plaintiff's personal information and personal information of each class member.  As a result, Plaintiff and members of the class have been deprived of a material aspect of the benefit of the bargain of the contract of completing and filing electronically their state and federal tax return using the TurboTax tax preparation software. Accordingly, Plaintiff contends that the contract is rescinded pursuant to California Civil Code § 1689(b)(4) and is of no force or effect.

45.     Plaintiff requests that the Court determine the rights and responsibilities of the parties under the agreement with Intuit and declare that the agreement is rescinded under California Civil Code § 1689(b)(4) and is of no force or effect, and seeks relief as prayed for below.

### THIRD CAUSE OF ACTION
### (BREACH OF CONTRACT)

46.     Plaintiff incorporates the allegations in each above numbered paragraph.

47.     Intuit entered into a written contract with consumers – Plaintiff and class members, in which it promised to safeguard the confidential personal and tax return information entrusted to it by Plaintiff and class members.

48.     Intuit encouraged customers to "file with confidence."

49.     However, Intuit breached the promise to safeguard the confidential personal and tax return information of Plaintiff and class members when, although well aware of the frequency of tax fraud incidents, especially of those filed through its TurboTax system, it failed to implement reasonable and adequate security measures and allowed fraudsters to either access Plaintiff and class members' accounts or to create new accounts using their personal information, without flagging as suspicious or investigating these filings.

**50.**     As a proximate result of Defendant's breach of its contractual promise, Plaintiff and class members have suffered direct and measurable economic losses, threat of future losses as a result of being placed an increased risk of fraud in the future, emotional injury, and other damages as allowed by law.

### FOURTH CAUSE OF ACTION
### (UNJUST ENRICHMENT/RESTITUTION)

51.     Plaintiff incorporates the allegations in each above numbered paragraph.

52.     Plaintiff and class members conferred upon Defendant an economic benefit in the form of monies paid for the purchase of TurboTax software.

53.     Part of the monies paid by Plaintiff and class members should have been spent by Intuit for implementing and maintaining reasonable and adequate security measures to protect their personal information.

54.     Intuit failed to provide reasonable security, safeguard and protection to the personal information of Plaintiff and members of the class and as a result, Plaintiff and members of the class overpaid Intuit for the services purchased.

55.     It would be inequitable and unjust for Defendant to be permitted to retain any of the unlawful proceeds resulting from its unlawful, unfair and/or fraudulent business practices.

56.     Defendant has been unjustly enriched as a result of its wrongful conduct. Plaintiff and class members are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendant as a result of such business practices, and seek relief as prayed for below.

**FIFTH CAUSE OF ACTION**
**(NEGLIGENCE)**

57.     Plaintiff incorporates the allegations in each above numbered paragraph.

58.     In maintaining Plaintiff's account and accounts of class members, Intuit owed them a duty to exercise reasonable care in safeguarding and protecting that information. This duty included, among other things, maintaining and testing TurboTax software and system and taking reasonable security measures to protect and adequately secure personal information and customer accounts from unauthorized use or access. Intuit was aware of the fact that tax fraud was the most common form of fraud and that tax fraud was frequently perpetrated through its system.

59.     Intuit breached that duty of care by failing to adequately secure and protect Plaintiff's and class members' personal information from theft and/or misuse by third parties.

60.     It was foreseeable that if Intuit did not take reasonable and adequate security measures, the data of Plaintiff and class members would be stolen or misused. Fraudulent tax filings were the highest form of identity fraud for the past five years and Intuit itself identified many fraudulent or suspicious filings, but allegedly refused to implement stronger security measures proposed by some of its employees.

61.     As a direct and proximate result of Intuit's failure to take reasonable care and use adequate security measures to protect personal information placed in its care, Plaintiff and class members had

their personal information and customer accounts misused, causing threat of direct and measurable monetary losses, threat of future losses, identify theft and threat of identity theft.

62.      As a direct and proximate result of Intuit's negligence and misconduct, Plaintiff and members of the class were injured in fact by: identity theft, tax fraud, and time and expense related to (a) informing the I.R.S. and/or state tax authorities of the tax fraud perpetrated against them through TurboTax; (b) submitting hard copies of their tax returns; (c) the general nuisance, time spent on dealing with all the issues resulting from the tax fraud, and the expense associated with the loss of productivity during the time spent on dealing with these issues.

63.      Intuit breached its duty to exercise reasonable care in protecting the personal information and accounts of Plaintiff and the class by failing to implement and maintain reasonable and adequate security measures, failing to monitor its system for suspicious activity, allowing unauthorized access to customer accounts or unauthorized creation of new accounts.

64.      But for Intuit's failure to implement and maintain reasonable and adequate security measures and failure to monitor its system for suspicious activity, the personal information of its customers and/or personal information of individuals who were not its customers would not have been misused by fraudsters.

65.      Intuit's negligence was a substantial factor in causing injury to Plaintiff and members of the class.

66.      Neither Plaintiff nor other members of the class have contributed to the security breach nor have they contributed to Intuit's failure to implement and maintain reasonable and adequate security measures.

67.      Plaintiff and the class seek relief as prayed for below.

**SIXTH CAUSE OF ACTION**
**(NEGLIGENT PERFORMANCE OF UNDERTAKING)**

68.      Plaintiff incorporates the allegations in each above numbered paragraph.

69.      Intuit undertook for consideration to performance tax preparation services for Plaintiff and class members for consideration.  As part of the tax preparation services, Plaintiff and class members

13

entrusted with Intuit their utmost personal and confidential information. As a result Defendant had a duty to protect that information.

70.   Plaintiff and class members suffered harm complained of herein due to Defendant's failure to exercise reasonable care in protecting the information entrusted to it by Plaintiff and class members.

71.   Plaintiff and the class seek relief as prayed for below.

**SEVENTH CAUSE OF ACTION**
**(MONEY HAD AND RECEIVED)**

72.   Plaintiff incorporates the allegations in each above numbered paragraph.

73.   Defendant received money belonging to Plaintiff and all others similarly situated when it sold them TurboTax tax preparation software. Defendant benefitted from the receipt of their money and retained it. Defendant is obligated to make restitution to Plaintiff and all others similarly situated for their purchase of TurboTax tax preparation software.

74.   Plaintiff seeks relief as prayed for below.

**EIGHTH CAUSE OF ACTION**
**(AIDING AND ABETTING FRAUD)**

75.   Plaintiff incorporates the allegations in each above numbered paragraph.

76.   On information and belief, Plaintiff alleges that Intuit had knowledge of the fact that fraudulent tax returns had been filed and that there was a high likelihood that they would continue to be filed using information of individuals and businesses similarly situated to Plaintiff and class members.

77.   Intuit substantially assisted in the advancement of fraud by failing to implement reasonable and adequate security measures that would prevent fraudsters from accessing accounts of Intuit's existing customers and/or from creating new accounts using other individuals' personal information and by failing to flag suspicious filings.

78.   Intuit also substantially assisted in the advancement of fraud by transmitting the fraudulent tax returns to the I.R.S. and state tax authorities.

79.   As a result of Defendant's actions and/or inactions, Plaintiff and class members suffered economic and emotional injury.

80.   Plaintiff and class members seek relief as prayed for below.

14

CLASS ACTION COMPLAINT

**NINTH CAUSE OF ACTION**
**(AIDING AND ABETTING CONVERSION)**

81.     Plaintiff incorporates the allegations in each above numbered paragraph.

82.     Fraudsters' actions in filing fraudulent tax returns and diverting tax refunds to their own accounts constituted conversion.

83.     On information and belief, Plaintiff alleges that Intuit had knowledge of the fact that fraudulent tax returns had been filed and tax refunds had been fraudulently diverted and that there was a high likelihood that fraudulent tax returns would continue to be filed using information of individuals and businesses similarly situated to Plaintiff and class members and that tax returns would continue to be wrongfully converted.

84.      Intuit substantially assisted fraudsters in converting Plaintiff and class members' funds by transmitting fraudulent income tax returns to the I.R.S. and/or state tax authorities and by allowing fraudsters to use TurboTax to divert the tax refund to prepaid debit cards or fraudsters' accounts.

85.     As a result of Defendant's actions and/or inactions, Plaintiff and class members suffered economic and emotional injury.

86.     Plaintiff and class members seek relief as prayed for below.

**TENTH CAUSE OF ACTION**
**(UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200)**

87.     Plaintiff incorporates the allegations in each above numbered paragraph.

88.     Cal. Bus. & Prof. Code §§ 17200, *et seq.* prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business act or practice.  Bus. & Prof. Code § 17204 allows "any person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL.  Such a person may bring such an action on behalf of themselves and others similarly situated who are affected by the unlawful, unfair, or fraudulent business practice.

89.     Defendant failed to take reasonable and adequate security precautions, such as implementing a two-factor authentication process, to protect TurboTax accounts of Plaintiff and class members from being hacked and accessed by fraudsters, and has refused and/or failed to issue a refund for the purchase price of TurboTax software to Plaintiff and class members upon learning that their TurboTax accounts were hacked by fraudsters and used to file fraudulent tax returns and Plaintiff and class

members lost the full benefit of their bargain with Intuit.  These actions by Intuit constitute unfair and/or fraudulent business practices

90.     As a direct and proximate result of Defendant's unlawful, unfair, and/or fraudulent acts and practices described herein, Plaintiff and others similarly situated have suffered economic injuries. Defendant has unjustly profited from its unlawful, unfair, and/or fraudulent acts and practices.

91.     As a result of the unfair business practices, Plaintiffs and all similarly situated individual seek all available remedies, including restitution, rescission and injunction to enjoin the unfair business practices of Intuit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

A.     That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and define the Class as requested herein;

B.     The judgment be entered in favor of Plaintiff and class members and against Defendant;

C.     That the Court adjudge and decree that the contract is rescinded and order restitution of the consideration paid by Plaintiff and class members.

D.     That the Court adjudge and decree that Defendant's practices violate the Unfair Competition Law, § 17200, set seq. of the Cal. Bus. & Prof. Code.

E.     That Plaintiff and all others similarly situated be awarded restitution, including disgorgement of profits obtained by Defendant as a result of its acts of unjust enrichment, or any negligent acts or practices, or acts or practices in violation of the UCL, actual, incidental, and punitive damages.

F.     That Defendant, it affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintain, or renewing their conduct, or from entering into any other contract having a similar purpose or effect, and from adopting or following any practice, plan or program having a similar purpose or effect;

G.      That Plaintiff and class members be awarded pre- and post-judgment interest, and that the interest be awarded at the highest legal rate from and after the date of service of the initial Complaint in this action;

H.      That Plaintiff recover his costs of suit and reasonable attorneys' fees; and

I.      That the Court grant other legal and equitable relief as it may deem just and proper under the circumstances, including such other relief as the Court may deem just and proper.

### JURY DEMAND

Plaintiff, on behalf of himself and putative class members, demands the trial of this action take place before a jury.

Dated:  May 21, 2015                          Respectfully submitted,

                                              __s/ Julian Hammond_____
                                              Julian Hammond

                                              HAMMONDLAW, P.C.
                                              1829 Reisterstown Road, Suite 410
                                              Baltimore, MD  21208
                                              (310) 601-6766
                                              (310) 295-2385 (Fax)

                                              Attorneys for Plaintiffs and Putative Class

CLASS ACTION COMPLAINT